**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| **HELENA Y. RAJA**, ) | |
| ) | |
| Plaintiff, ) | Case No. EDCV13-01147 AJW |
| ) | |
| v. ) | MEMORANDUM OF DECISION |
| ) | |
| **CAROLYN W. COLVIN, Acting** ) | |
| **Commissioner of the Social** ) | |
| **Security Administration**, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff filed this action seeking reversal of the decision of the defendant, the Acting Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits ("DIB"). The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

Plaintiff filed an application for DIB benefits on August 25, 2009, alleging that she had been disabled since March 1, 2007 due to degenerative disc disease, diabetes, obesity, sleep apnea, fibromyalgia, chronic obstructive pulmonary disease ("COPD"), allergies, anxiety, and depression. [Administrative Record ("AR") 28, 122-123]. Plaintiff's application was denied initially and upon reconsideration. [JS 2; AR 61-64, 66-70]. Plaintiff requested an administrative hearing, which was conducted before an administrative law judge (the "ALJ") on May 25, 2011. [AR 37-55]. Plaintiff, who was not represented

during the hearing, testified on her own behalf. [AR 39]. Testimony also was received from Troy Scott, a vocational expert. [AR 51].

On June 22, 2011, the ALJ issued a written decision denying plaintiff's application for benefits. [AR 23-36]. The ALJ found that plaintiff had the following severe impairments: degenerative disc disease, diabetes, and obesity. [AR 28]. The ALJ determined, however, that plaintiff's impairments, singly or in combination, did not meet or equal an impairment included in the Listing of Impairments (the "Listing"). [AR 29-30]. See 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ further found that plaintiff retained the residual functional capacity ("RFC") to perform the full range of medium work, and therefore that plaintiff could perform her past relevant work as a social worker. [AR 30-32]. The ALJ concluded that plaintiff was not disabled at any time from March 1, 2007, the alleged disability onset date, through January 31, 2011, the date last insured. [AR 32]. The Appeals Council denied plaintiff's request for review. [AR 1-7].

**Background**

Plaintiff was born on February 14, 1945, and was sixty-six years old when the ALJ issued her decision. [AR 41, 122]. Plaintiff began her employment with Delta Sigma Theta Head Start/State Pre-School on March 12, 1978. [AR 321]. From 1978 until 2007, she worked at a Head Start preschool as a Family Service Coordinator, which involved working with the families of students and providing counseling workshops. [AR 321]. During the hearing, plaintiff said that she had been receiving social security retirement benefits since 2007. [AR 41]. She testified that after terminating her employment with Head Start in 2007, she had worked for the County of San Bernardino in 2009 but was fired because she "couldn't keep up with the work." [AR 42]. She also testified that she worked for Catholic Cemeteries but "had to give that up because of the migraine headaches that were so bad." [AR 42]. The documentary evidence indicates that plaintiff went back to work on January 16, 2009 and worked until April 8, 2009. [AR 123].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir.

2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

**Statement of Disputed Issues**

Plaintiff contends that the ALJ improperly disregarded the opinions of her treating and examining physicians. [JS 4]. Plaintiff also contends that the ALJ failed to provide legally sufficient reasons for rejecting plaintiff's testimony. [JS 13].

**Discussion**

**Medical opinion evidence**

Plaintiff alleges that the ALJ erred in disregarding the opinions of Dr. Earl Young, Dr. Paul Clement, Dr. Magda Robinson. [AR 4].

In general, "[t]he opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant." Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citing Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)); Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001). Although a treating physician's opinion is usually afforded the greatest weight in disability cases, a treating physician's opinion is not binding on the Commissioner with respect to the existence of an impairment or the ultimate issue of disability. Tonapetyan, 242 F.3d at 1148. When a treating physician's medical opinion as to the nature and severity of an individual's impairment is well-supported and not inconsistent with other substantial evidence in the record, that opinion must be given controlling weight. Orn, 495 F.3d at 631-632; Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001); Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *1-*2. Even when not entitled to controlling weight, "treating source medical opinions are still entitled to deference and must be weighed" in light of (1) the length of the treatment relationship; (2)

the frequency of examination; (3) the nature and extent of the treatment relationship; (4) the supportability of the diagnosis; (5) consistency with other evidence in the record; and (6) the area of specialization. Edlund, 253 F.3d at 1157 & n.6 (quoting SSR 96-2p and citing 20 C.F.R. § 404.1527); Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001).

The ALJ must provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting an uncontroverted treating source opinion. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). If contradicted by that of another doctor, a treating or examining source's opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan, 242 F.3d at 1148-1149; Lester, 81 F.3d at 830-831.

**Dr. Young**

Earl S. Young, M.D., a specialist in sleep medicine, treated plaintiff for obstructive sleep apnea. [AR 192]. The record indicates that Dr. Young treated plaintiff five times between August 2007 and October 2007. [AR 192-209]. Dr. Young performed two overnight sleep studies on plaintiff in 2007 and encouraged plaintiff to use a continuous positive airway pressure ("CPAP") mask to address her sleep apnea. [AR 192-209].

In an October 2007 letter to plaintiff's treating internist, Dr. Richard B. Williams, Dr. Young opined that plaintiff had obstructive sleep apnea, and that she "should not return to work until she is no longer tired from her apnea or depression." [AR 192].

The ALJ rejected Dr. Young's opinion, reasoning that plaintiff's sleepiness did not prevent her from performing activities of daily living. [AR 31]. The ALJ also noted that plaintiff's sleep apnea improved with treatment, and that she complained of sleepiness during the day only when she was having "treatment issues." [AR 28].

Substantial evidence supports the conclusion that plaintiff's complaints of daytime sleepiness were related to "treatment issues," and that her sleep issues were effectively treated aside from "temporary exacerbations related to temporary inadequate treatment." [AR 31]. Although plaintiff told Dr. Young that she had been unable to use her CPAP mask due to problems with its fit, he noted on September 6, 2007 that

plaintiff was going to undergo a CPAP trial using another mask. She underwent such a trial during a sleep study dated September 29, 2007. Dr. Young reported that plaintiff's obstructive sleep apnea was "significantly improved with successful CPAP titration" using a comfort gel mask. He encouraged her to continue using her CPAP. [AR 192, 194, 200, 207].

During the same time period, plaintiff's treating internist, Dr. Williams, noted that plaintiff had been unable to use her CPAP mask due to an air leak, which led her to be very fatigued during the day. However, plaintiff said that she would contact Dr. Young about repairing it or replacing it, and she also said that she was due to have a repeat sleep study. Dr. Williams also said that he would release plaintiff back to work when she got her CPAP mask back. [AR 217-219]. Neither Dr. Williams nor Dr. Young indicated that plaintiff was unable to obtain a different mask for her CPAP.

Dr. Robinson, a board-certified family physician who treated plaintiff intermittently beginning in 2008, noted in February 2010 that plaintiff said she had not been using her CPAP machine at night for over a year because the mask did not fit properly, and that she reported increased daytime sleepiness, fatigue, and chronic daytime headaches. [AR 453]. On May 3, 2010, plaintiff reported to Dr. Robinson that she was using her CPAP with a new mask, and that it helped with her day sleepiness and alertness. [AR 449]. Nothing in the record suggests that plaintiff could not have obtained the new mask before May 2010. Therefore, the ALJ reasonably rejected Dr. Young's opinion that plaintiff's sleep apnea was a disabling impairment. See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) (finding that impairments that can be controlled with medication are not disabling for the purpose of determining eligibility for SSI benefits); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication).

The ALJ permissibly concluded that Dr. Young's opinion that plaintiff "was too tired in the morning to go to work" was inconsistent with plaintiff's testimony regarding the activities of her daily life. [AR 30-31]. See 20 C.F.R. § 404.1527(c)(2)(ii)(4) (stating that the more consistent an opinion is with the record as a whole, the more weight that opinion will be afforded). Plaintiff testified that she "sometimes" had trouble getting up in the morning, depending on what time she went to bed and how many times she got up during the night to go to the bathroom. [AR 47]. She also testified, however, that she tried to get up by 9:00 a.m., and that she had three cats that "motivated [her] to get up out of bed in the morning" because they were

hungry and needed to be fed. [AR 47-48]. In addition to caring for her cats, plaintiff said that she exercised five times a week by working out at Curves, taking Zumba classes, and walking in the mall; watched television; read; emailed; played computer games; went shopping; cooked for herself; visited friends and family; and attended church weekly. [See AR 44, 47-51, 244]. The ALJ rationally concluded that plaintiff's statements regarding her daily activities were inconsistent with Dr. Young's opinion that plaintiff was too tired to get up to go to work in the morning.

### Dr. Robinson

Magda Robinson, M.D. is a board-certified family physician who treated plaintiff intermittently since 2008 for various medical issues. [AR 429]. In a letter dated March 10, 2011, Dr. Robinson stated that plaintiff has Diabetes Mellitus Type II, sleep apnea, anxiety, major depression, hypertension, elevated cholesterol, occipital neuralgia, COPD, migraine headache, and anemia. [AR 429]. She noted that plaintiff has emotional factors that contribute to her functional limitations, such as major depression and anxiety disorder. [AR 429]. Dr. Robinson opined that these medical conditions make it very hard for plaintiff to perform job duties consistently, and "have severely impaired her ability to permanently work." [AR 429]. Dr. Robinson also completed an RFC questionnaire on behalf of plaintiff and concluded that plaintiff could not sit or stand and/or walk for more than thirty minutes in an eight-hour work day. [AR 457-458].

The ALJ rejected Dr. Robinson's opinion because it was not corroborated by the treatment record or by any objective evidence in the record. [AR 31].

The ALJ rationally concluded that Dr. Robinson's treatment record does not support her opinion that plaintiff was severely impaired in her ability to work. See Bayliss, 427 F.3d at 1217 (holding that the ALJ properly rejected a treating physician's opinion that was contradicted by the doctor's treatment notes). Dr. Robinson noted on May 3, 2010 that plaintiff reported that CPAP use had helped with her daytime sleepiness and alertness. [AR 449]. Dr. Robinson also noted on this date that the plaintiff "feels her depression is controlled at this time and has not had relapses." [AR 449]. In late 2010, plaintiff reported to Dr. Robinson that her headaches were improved with Neurontin and Motrin. [AR 437]. On January 19, 2011, two months prior to writing the March 10, 2011 letter, Dr. Robinson noted that plaintiff was independent in activities of daily living ("ADL") and instrumental activities of daily living ("IADL") and assessed plaintiff's depression, anxiety disorder, gastroesophageal reflux disease, hypertension, and

hypercholesterolemia (high cholesterol) as stable on her then-current medications. [AR 432-433]. Thus, Dr. Robinson's treatment notes, which show that plaintiff's symptoms were much improved by medication and treatment, are inconsistent with her opinion that plaintiff was severely impaired in her ability to work. See Morgan, 169 F.3d at 603 (stating that "internal inconsistencies within [the treating and examining physicians'] reports, and the inconsistencies between their reports, also constitute relevant evidence" to support rejection of those physicians' opinions).

Dr. Robinson's disability findings and opinion are also inconsistent with the consultative examination findings and opinions of Sandra M. Eriks, M.D. Dr. Eriks conducted an Internal Medicine Evaluation of plaintiff at the request of the Department of Social Services on March 16, 2009. [AR 372-376]. Based upon plaintiff's self-reported medical history, physical examination of plaintiff, and review of medical records, Dr. Eriks opined that plaintiff was able to lift and carry twenty pounds occasionally and ten pounds frequently. [AR 376]. Plaintiff could also stand and/or walk for six hours out of an eight-hour workday and could sit for six hours out of an eight-hour workday. [AR 376]. Postural limitations were noted to be occasional climbing, stopping, kneeling, and crouching, but there were no manipulative, visual, communicative, or environmental limitations. [AR 376]. Thus, Dr. Robinson's assessment that plaintiff was severely impaired in her ability to work is inconsistent with the findings of Dr. Eriks, who opined that plaintiff was able to perform medium work. See Morgan, 169 F.3d 595 at 603 (holding that inconsistencies between the opinions of two doctors provided additional justification for the ALJ's rejection of one doctor's opinion). Plaintiff's testimony that she exercises five days a week at Curves, Zumba, and the mall also contradicts Dr. Robinson's RFC assessment. [AR 44]. See Lester, 81 F.3d at 831 (citing Andrews v. Shalala, 53 F.3d 1035, 1042-1043 (9th Cir. 1995) (rejecting a treating or examining physician's opinion is allowed when the opinion conflicted with testimony from the claimant and with medical records contained in the record)).

Dr. Eriks conducted a second evaluation of plaintiff eight months later, on November 23, 2009, at which time plaintiff had been working full-time for six weeks selling funeral plots. [AR 400]. Dr. Eriks concluded that plaintiff was able to lift and carry fifty pounds occasionally and twenty-five pounds frequently. [AR 404]. Dr. Eriks also opined that plaintiff could stand and/or walk six hours out of an eight-hour workday and could sit six hours out of an eight-hour workday. [AR 404]. She added that there were

7

no postural, manipulative, visual, communicative, or environmental limitations. [AR 404].

Dr. Robinson's opinion is not supported by her own treatment record, plaintiff's testimony, or the findings of the examining internist, Dr. Eriks. Thus, the ALJ properly rejected Dr. Robinson's treating opinion.

**Dr. Clement**

In a January 21, 2009 letter, Paul W. Clement, Ph.D. stated that he had seen plaintiff a total of fifty-four times beginning in May 2006, with the most recent session of psychotherapy occurring on October 30, 2008. [AR 285]. His initial diagnostic impressions were "specific phobia" and eating disorder NOS. [AR 285]. After Dr. Clement began treating the plaintiff, she began reporting severe harassment by her supervisor at work, and Dr. Clement diagnosed "Major Depressive Disorder, Severe without Psychotic Features." Plaintiff never returned to work. [AR 285]. Dr. Clement wrote that although he "repeatedly encouraged [plaintiff] to return to work, her multiple health problems, high anxiety, and depression have prevented her from doing so." [AR 286].

A treating physician such as Dr. Clement "bring[s] a unique perspective to the medical evidence. The treating physician's continuing relationship with the claimant makes him especially qualified to form an overall conclusion as to the plaintiff's functional capacities and limitations, as well as to prescribe or approve the overall course of treatment." Lester, 81 F.3d at 833.

Dr. Clement's speciality is also relevant. He is a licensed psychologist and a diplomate in Clinical Psychology certified by the American Board of Professional Psychology. Thus, his speciality makes him well-qualified to assess plaintiff's psychological condition. See Smolen, 80 F.3d at 1285 (explaining that the opinion of a specialist about medical issues related to his or her area of specialization are given more weigh than the opinion of a nonspecialist) (citing 20 C.F.R. § 404.1527(d)(5)).

Finally, plaintiff's treatment history with Dr. Clement consisted of psychotherapy sessions beginning in May 2006 and continuing up until January 2009, when Dr. Clement opined that plaintiff was unable to return to work. [AR 285]. Therefore, Dr. Clement had the benefit of treating plaintiff frequently over a period of almost three years. [AR 285]. The Commissioner's regulations recognize the importance of such longitudinal evidence. See, e.g., 20 C.F.R. § 404.1527(d)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will

give to the source's medical opinion."); 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00D (noting that the level of functioning of a claimant with a mental impairment "may vary considerably over time. . . . Thus, it is vital to obtain evidence from relevant sources over a sufficiently long period. . . .").

The ALJ rejected Dr. Clement's opinion on the ground that Dr. Clement would not have encouraged plaintiff to return to work if plaintiff's symptoms truly prevented her from doing so. [AR 29]. The ALJ surmised that Dr. Clement was "inappropriate[ly]" relying on plaintiff's subjective symptoms complaints in making that assessment. [AR 29].

Even if Dr. Clement encouraged plaintiff to return to work, Dr. Clement's subjective judgments regarding plaintiff's disabled status "are important, and properly play a part in their medical evaluations. Accordingly, the ultimate conclusions of [treating] physicians must be given substantial weight; they cannot be disregarded unless clear and convincing reasons for doing so exist and are set forth in proper detail." Embrey, 849 F.2d at 422. This is especially so where psychiatric impairments are concerned. Courts have recognized that "[a] psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as a medical impairment," and that "clinical and laboratory data" supporting a claim of mental illness "may consist of the diagnosis and observations of professionals trained in the field of psychopathology." Blankenship v. Bowen, 874 F.2d 1116, 1121 (6th Cir. 1989) (per curiam) (ellipses omitted).

The ALJ's rejection of Dr. Clement's disability opinion on the ground that it was premised solely on plaintiff's subjective symptoms also ignores the findings and opinions of examining psychologist Dr. Barry A. Halote, which are consistent with Dr. Clement's assessment. Dr. Halote conducted two psychological treatment evaluations on November 6, 2008 and January 7, 2009. [AR 320, 366-371]. Dr. Halote and Dr. Clement both concluded that plaintiff was suffering from a "Major Depressive Disorder" and opined that plaintiff was unable to work. [AR 285, 363]. This lends additional support to Dr. Clement's opinion. See Matthews v. Shalala, 10 F.3d 678, 679 (9th Cir. 1993) (explaining that in general, the more consistent an opinion is with the record as a whole, the more the weight is afforded to that opinion).

Therefore, the ALJ's reasons for rejecting Dr. Clement's findings and opinions are not based on substantial evidence and do not reflect application of the proper legal standards.

**Dr. Halote**

9

Barry A. Halote, Ph.D., a licensed psychologist and a workers' compensation Qualified Medical Evaluator, reviewed plaintiff's medical records, conducted a mental status examination, and administered psychological testing on November 6, 2008 in connection with plaintiff's worker's compensation claim. [AR 320]. Dr. Halote concluded that plaintiff was suffering from a "Major Depressive Disorder, Single Episode–Mild" secondary to her reported cumulative stress experienced in her work place. [AR 363]. Dr. Halote gave plaintiff a Global Assessment of Functioning ("GAF") score of 51,[1] which equates to a Whole Person Impairment rating of 29% under the workers' compensation rating system. [AR 368]. Dr. Halote wrote that rather than being "grossly incapacitated in functioning, [plaintiff] is likely to continue functioning, though at a reduced level of efficiency." [AR 362]. He concluded that plaintiff's psychological condition is considered "temporarily totally disabling at this time"[2] and opined that she would benefit from individual therapy sessions to effectively return to her pre-injury functionality. [AR 363]. Dr. Halote re-evaluated plaintiff on January 7, 2009. [AR 366-371]. During this evaluation, Dr. Halote concluded in his February 4, 2009 supplemental report that plaintiff had a GAF of 52 and noted that plaintiff remained "temporarily totally disabled from a psychological perspective" and was "unable to return to work at this time in any capacity." [AR 370].

The ALJ rejected Dr. Halote's opinion because Dr. Halote's statements were not consistent with his record of an essentially benign mental status examination. The ALJ concluded that it was "apparent that Dr. Halote is advocating for the claimant" and therefore was not an unbiased medical source. [AR 29].

Although Dr. Halote noted that plaintiff had worried facial expressions, admitted suicidal ideation

---

[1] The GAF score is a "multiaxial" assessment that reflects a clinician's subjective judgment of a patient's overall level of functioning by asking the clinician to rate two components: the severity of a patient's psychological *symptoms,* or the patient's psychological, social, and occupational *functioning*. A GAF score of 51 through 60 signifies moderate symptoms, such as flat affect or occasional panic attacks, or moderate difficulty in social, occupational, or school functioning, such as having few friends or conflicts with peers or co-workers. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM-IV") Multiaxial Assessment, 27-36 (rev. 2000).

[2] Under California workers' compensation law, "the term 'temporarily totally disabled' means that an individual is 'totally incapacitated' and 'unable to earn any income during the period when he is recovering from the effects of the injury.'" Iatridis v. Astrue, 501 F. Supp. 2d 1267, 1277 (C.D. Cal. 2007) (quoting Booth v. Barnhart, 181 F.Supp.2d 1099, 1103 n.2 (C.D. Cal. 2002)).

without plan or intent, and was withdrawn throughout the mental status evaluation process, he noted nothing else unusual or abnormal about plaintiff's appearance. Plaintiff's mood and affect were appropriate to the situation, there was no indication of hyperactivity or psychomotor retardation, and plaintiff remained cooperative, alert, and attentive throughout the evaluation. [AR 328–329, 369-370].

In addition to a mental status examination, Dr. Halote also conducted an extensive review of plaintiff's medical records dating from 1997 to 2008, took a history from plaintiff, performed psychological testing, and interpreted and evaluated those test results. [AR 320-365]. An overall assessment of the psychological testing administered revealed that plaintiff "tends to react to stress, including responsibility, with physical symptoms, and resists attempts to explain her symptoms in terms of emotional or psychological factors." [AR 362]. Dr. Halote also noted that plaintiff displays depressive symptoms, can be described as generally anxious tense, and nervous, and tends to be restless and irritable." [AR 362].

Thus, Dr. Halote did not rely exclusively on plaintiff's mental status examination to support his findings, diagnosis, and functional assessment. He also considered plaintiff's psychological test results, subjective history, and medical records to conclude that she was suffering from a "Major Depressive Disorder, Single Episode–Mild." The ALJ's conclusion that Dr. Halote's opinion was inconsistent with an "essentially benign" mental status examination was not based on substantial evidence. The ALJ failed to acknowledge the psychological testing or medical records supporting Dr. Halote's finding of disability. See Matthews, 10 F.3d at 679 (explaining that in general, the more consistent an opinion is with the record as a whole, the more the weight is afforded to that opinion).

Furthermore, the ALJ erred in rejecting the opinion of Dr. Halote on the basis that it was "apparent" that Dr. Halote was "advocating" for plaintiff. [AR 29]. No evidence in the record supports that characterization. See Nguyen v. Chater, 100 F.3d 1462, 1464 (9th Cir. 1996) (holding that absent evidence of "actual improprieties" or of a "deliberate[] attempt[] to mislead the ALJ for the purpose of helping [the] claimant obtain benefits," the doctor's "credibility is not subject to attack" on the ground that the claimant was referred by his attorney); Lester, 81 F.3d at 832 ("The Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits. ") (citation omitted).

Thus, the ALJ committed legal error when she rejected the examining source opinion of Dr. Halote by reasoning that his finding of disability was inconsistent with an "essentially benign" mental status

examination and that Dr. Halote was "advocating" for plaintiff. These were not specific, legitimate reasons for rejecting such an opinion based on substantial evidence.

For the reasons described above, the ALJ's rejection of the opinions of Dr. Clement and Dr. Halote was not supported by substantial evidence and was legal error.

**Remedy**

The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S. 1038 (2000). The Ninth Circuit has observed that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (quoting INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam)). A district court, however, should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (citing Harman, 211 F.3d at 1178). The Harman test "does not obscure the more general rule that the decision whether to remand for further proceedings turns upon the likely utility of such proceedings." Harman, 211 F.3d at 1179; see Benecke, 379 F.3d at 593 (noting that a remand for further administrative proceedings is appropriate "if enhancement of the record would be useful").

Although the ALJ provided legally insufficient reasons for rejecting the opinions of Drs. Clement and Halote, their opinions are somewhat ambiguous as to the specific nature, extent, and duration of plaintiff's work-related mental functional limitations. A remand for further administrative proceedings is required so that those outstanding issues may be resolved, and so that the ALJ also can re-evaluate the credibility of plaintiff's subjective symptom complaints in light of a proper assessment of the medical

Case 5:13-cv-01147-AJW   Document 15   Filed 08/11/14   Page 13 of 13   Page ID #:553

opinion evidence.[3]

**Conclusion**

For the reasons stated above, the Commissioner's decision is not supported by substantial evidence and does not reflect application of the proper legal standards. Accordingly, the Commissioner's decision is **reversed**, and this case is **remanded** to the Commissioner for further administrative proceedings consistent with this memorandum of decision.

**IT IS SO ORDERED.**

DATED:   August 11, 2014

                                      ANDREW J. WISTRICH
                                      United States Magistrate Judge

---

[3] This disposition makes it unnecessary to separately consider plaintiff's contention that the ALJ erred in rejecting the alleged severity of her subjective complaints.